UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMY L. MODY, | No. 5:13-CV-986 [GTS/TWD] |
| Plaintiff, | |
| v. | **COMPLAINT** |
| CARDINAL HEALTH INC., CARDINAL HEALTH, INC. 411, CARDIAL HEALTH PHARMACEUTICAL DISTRIBUTION CENTER And CHRISTOPHER PFEIFFER, individually, | |
| Defendants. | |

Plaintiff Amy L. Mody ("Ms. Mody" or "Plaintiff"), by and through her attorneys Levine & Blit, PLLC, complaining of Defendants Cardinal Health, Inc.; Cardinal Health 411.Inc., Cardinal Health Pharmaceutical Center, Inc,. (Hereinafter "Cardinal Health"), and Christopher Pfeiffer, Individually ("Mr. Pfeiffer") (hereinafter all defendants shall be collectively referred to as "Defendants"), hereby alleges:

### NATURE OF THE ACTION

1.      This action is brought to remedy violations of the Americans with Disabilities Act and the New York State Human Rights Law.  Defendants discriminated against Ms. Mody because she suffers from Multiple Sclerosis.  They took several adverse employment actions against her, and eventually terminated her employment.  These actions violated the Americans with Disabilities Act and the New York Human Rights Law.

1

2. Ms. Mody seeks injunctive and declaratory relief against Defendants for their unlawful actions; compensatory damages should include front and back pay; as well as damages for emotional distress, mental anguish, and humiliation. Ms. Mody also seeks punitive damages; costs of reasonable attorneys' fees; and costs of this action to the fullest extent of the law, as well as any additional relief the Court deems prudent.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1367. Ms. Mody's state law claims under the New York Human Rights Law arise under the same nucleus of operative facts as do her federal claims.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to Plaintiff's claims occurred in the Northern District of New York

## ADMINISTRATIVE FILINGS

5. Plaintiff has complied fully with all administrative and jurisdictional prerequisites for bringing a discrimination claim against the Defendant under applicable law. Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission dated May 17, 2013. As this Complaint was filed before August 15, 2013, Ms. Mody has preserved her right to sue by filing within ninety (90) days of receiving the Notice of Right to Sue. A copy of said Notice of Right to Sue is attached to this Complaint as Exhibit "A".

## THE PARTIES

6.      At all times relevant hereto, Plaintiff, Ms. Mody, was a resident of Cicero, New York.  She was diagnosed with Multiple Sclerosis ("MS") in August, 2002.  She began her employment with Defendants as the Executive Assistant to the Director of Operations, Mr. Christopher Pfeiffer, ("Pfeiffer") on or about August 2010.

7.      Cardinal Health is a foreign corporation organized under the laws of the State of Ohio, with its headquarters in Dublin, Ohio.  Ms. Mody was employed by Cardinal Health at their Syracuse office, located at 6012 East Molloy Road, East Syracuse, New York 13211.

8.      At all times relevant to this action, Mr. Pfeiffer was Ms. Mody's manager and supervisor.  Ms. Mody was employed as Mr. Pfeiffer's executive assistant, and as such, Mr. Pfeiffer had direct and immediate control over all aspects of Ms. Mody's employment and daily duties and had the authority to take tangible employment decisions regarding the terms and conditions of Ms. Mody's employment.

9.      At all times relevant to this action, Defendants employed at least fifteen (15) individuals, and is therefore an "employer" within the meaning of applicable state and federal statutes.

10.     At all times relevant to this action, Ms. Mody was an "employee" of Cardinal Health within the meaning of applicable federal and state statutes.

11. At all times relevant to this action, Ms. Mody suffered from MS. As such, she was a "qualified individual with a disability" within the meaning of applicable federal and local statutes. MS impairs Ms. Mody's ability to live and work on a daily basis.

12. At all times relevant hereto, Ms. Mody was qualified for her position with Defendant, with or without a reasonable accommodation.

**FACTUAL ALLEGATIONS**.

13. At all times relevant to this action, Ms. Mody suffered from Multiple Sclerosis. She was diagnosed with Multiple Sclerosis in August of 2002. As part of her treatment, Ms. Mody receives monthly chemotherapy infusions.

14. MS is a disease which affects the brain and spinal cord. The symptoms that plaintiff suffers from include, but are not limited to, fatigue, inability to regulate her core body temperature which leads to overheating of her body, and challenges with cognitive issues. MS is an impairment that substantially limits Ms. Mody's everyday life.

15. Plaintiff began working for Defendants in August, 2010. She did not originally disclose to Defendants that she suffered from MS.

16. At all relevant times hereto before Plaintiff was qualified for her position with defendant and ably and competently performed her job duties.

17. Plaintiff also frequently received commendations and positive reviews regarding her work performance from Defendants.

18. On or about the end of March, 2011, Plaintiff informed Mr. Pfeiffer that she had MS. During this conversation, she asked Mr. Pfeiffer whether she needed to file paperwork for the Family Medical Leave Act ("FMLA") and how she should go about securing the time off she required to undergo her chemotherapy infusions.

19. Plaintiff tried to manage her chemotherapy treatment appointments in such a way that they would not interfere with her job responsibilities or the success of Cardinal Health. Mr. Pfeiffer undermined these efforts by refusing and/or omitting to provide any guidelines on what she needed to do to secure the necessary time off from work.

20. Despite her history of performing her work capably and competently, Mr. Pfeiffer placed Plaintiff on a 60-Day Performance Improvement Plan ("PIP") on May 6, 2011.

21. The PIP cited Plaintiff's purported poor time management skills, attendance issues and her need to get advanced permission to take time off.

22. Defendants did not take any sort of disciplinary or performance-based action against Plaintiff before she disclosed her MS to Pfeiffer and, in fact, Plaintiff had received numerous commendations for her work performance prior to the disclosure of her disability.

23. A condition of the PIP was a requirement that Plaintiff had to meet with Mr. Pfeiffer on a weekly basis to review her performance throughout the 60 day plan. Despite Plaintiff's efforts to schedule meetings with him as per the PIP, Mr. Pfeiffer only met with her three times during the nine week period.

24.     Because of the PIP, Ms. Mody was nervous and endured extreme anxiety regarding the status of her employment.

25.     During this same time period, Plaintiff had placed a flyer in the facility's break-room notifying her co-workers about an upcoming "MS" Walk and inviting them to join "Amy's Army" as a means of raising awareness about the disease. Michelle Leombrone, Defendant's director of Human Resources, tore this flyer down despite having no discussion with Plaintiff.

26.     In August, 2011, Plaintiff had emergency surgery to remove her gallbladder. The surgery was necessary due to potential complications from her monthly chemotherapy infusion.

27.     Unfortunately, a few days after surgery an infection developed at the surgical site requiring immediate care and causing Plaintiff to miss a few days of work.

28.     Plaintiff pleaded with her physician to let her return to work on light duty, which her physician permitted. She was nonetheless threatened by Defendants that she may not have her same position when she returned from four days of light duty.

29.     On or about August 19, 2011, Plaintiff completed the FMLA paperwork necessary so that she could take small amounts of time off on a monthly basis to continue receiving her chemotherapy infusions attendant to the treatment of her MS.

30.     On or about September 2011, Plaintiff had her year-end review. The year-end review noted that she successfully completed her PIP. This information was never conveyed to Plaintiff beforehand.

31. Nonetheless, on or about October 5, 2011, defendants sent Plaintiff a "performance expectations" letter ("Expectations Letter").

32. The Expectations Letter made completely unfounded and baseless accusations that, over the previous 60 days, Plainiff had continued to not perform her job duties satisfactorily.

33. The Expectations letter also re-alleged and referenced the May 2011 PIP as the basis for sending the Expectations letter.

34. On October 6, 2011, Plaintiff filed an internal complaint with Defendant's "My Safe Workplace" regarding the discriminatory treatment she was subjected to by Defendant.

35. On or about October 31, 2011, Defendant issued Plaintiff another PIP.

36. Upon information and belief, the PIP was also issued in retaliation for Plaintiff's "My Safe Workplace" complaint.  Plaintiff denies Mr. Pfeiffer's allegations that she performed her job duties in any substandard manner.

37. The My Safe Workplace investigation concluded at the end of November 2011 and did not result in any corrective action taken by Defendants.

38. On or about the end of January 2012, Plaintiff was given permission by Mr. Pfeiffer to change her work hours to 5:30 p.m. to 2:00 a.m. so she could work at a special "Kaizen" event sponsored by Defendant.

39.     The event began on Sunday January 29, 2012.  On Friday January 27, 2012, Plaintiff had a scheduled day off but was called into work – by Mr. Pfeiffer - to assist at a breakfast event.

40.     On January 31, 2012, Plaintiff had to make an unscheduled visit to Defendant's office in order to drop off keys for a locked toner cabinet that no one else at the office had.  She tried to contact Respondent's payroll administrator, Sue Taylor, in the morning to notify her that she would need access to the building.

 41.     Plaintiff had some trouble getting in touch with somebody to let her into the building and made several phone calls to various people.  Eventually, she was able to get into the building.

42.     On February 1, 2012, the "Kaizen" event concluded.   That same evening Mr. Pfeiffer called Ms. Mody into his office.  He instructed her that her job was being terminated because she had allegedly worked 1.35 hours of unauthorized overtime, which, upon information and belief, was the time in which she went to Defendant's office to unlock the ink toner cabinet.

43.     Plaintiff was authorized to take overtime in order to avoid business interruption.

44.     Further, Plaintiff had taken unauthorized overtime on several occasions and was even praised by Mr. Pfeiffer for her willingness to work overtime during the course of her year-end evaluation.

45. Defendants' termination of Plaintiff was a continuance of its discriminatory and retaliatory actions against Plaintiff because of her disability and engaging in a protected activity.

46. Defendants' termination was also in retaliation for her complaints of discrimination.

### FIRST CAUSE OF ACTION AGAINST CARDINAL HEALTH CARE
**(Discrimination based upon Disability in Violation of the ADA)**

47. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 46, as if set forth fully herein.

48. Plaintiff, as an individual with MS, is a member of the protected class of persons under the ADA.

49. At all times relevant to this action, Plaintiff was qualified by her education, training, experience and/or skill to hold the position of Executive Assistant at Cardinal Health Care and could perform the essential duties of the position, with or without a reasonable accommodation.

51. Pursuant to Defendants' unlawful acts and practices alleged above, Plaintiff was discriminated against in her employment because of her disability.

52. As a proximate result of the Defendants' unlawful acts and practices as alleged above, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings, and other employment benefits.

53. As a further proximate result of Defendants' unlawful acts and practices as alleged above, Plaintiff has suffered and continues to suffer compensatory damages for mental anguish, severe and lasting embarrassment, humiliation, emotional distress, and other incidental and consequential damages and expenses.

54. Defendant acted outrageously and intentionally with malice and reckless indifference to Plaintiff's protected civil rights under the ADA and Plaintiff is entitled to an award of punitive damages.

**SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**(Discrimination based upon Disability in Violation of the NYSHRL)**

55. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 54, as if set forth fully herein.

56. Plaintiff as an individual with MS, is a member of a protected class of persons under the NYSHRL.

57. At all times relevant to this action, Plaintiff was qualified by her education, training, experience and/or skill to hold the position of Executive Assistant with Defendants and could perform the essential duties of the position, with or without a reasonable accommodation.

58. Pursuant to Defendant's unlawful acts and practices alleged above, Plaintiff was discriminated against in her employment because of her disability.

59. As a proximate result of the Defendants' unlawful acts and practices as alleged above, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings, and other employment benefits.

60. As a further proximate result of Defendants' unlawful acts and practices as alleged above, Plaintiff has suffered and continues to suffer mental anguish, severe and lasting embarrassment, humiliation, emotional distress, and other incidental and consequential damages and expenses.

### THIRD CAUSE OF ACTION AGAINST CARDINAL HEALTH CARE
### (Retaliation in Violation of the ADA)

61. Plaintiff hereby repeats and realleges each allegation contained in paragraphs numbered "1" through "60" as if set forth fully herein.

62. On or about October 6, 2011, Plaintiff engaged in a protected activity when she made complaints on My Safe Workplace regarding the discriminatory acts and practices alleged above.

63. As a result of Plaintiff engaging in a protected activity, Defendant retaliated against Plaintiff in her employment by subjecting her to Performance Improvement Plans and terminating her employment with Defendants.

64. As a proximate result of the Defendant's unlawful acts and practices as alleged above, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings, and other employment benefits.

65.     As a further proximate result of Defendant's unlawful acts and practices as alleged above, Plaintiff has suffered and continues to suffer monetary and compensatory damages for mental anguish, severe and lasting embarrassment, humiliation, emotional distress, and other incidental and consequential damages and expenses.

66.     Defendants acted outrageously and intentionally with malice and reckless indifference to Plaintiff's protected civil rights under the ADA and Plaintiff is entitled to an award of punitive damages.

### FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Retaliation in Violation of the NYSHRL)

67.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs numbered "1" through "66," as if set forth fully herein.

68.     Plaintiff engaged in a protected activity when she made complaints on My Safe Workplace regarding the discriminatory acts and practices alleged above.

69.     As a result of Plaintiff engaging in a protected activity, Defendants retaliated against Plaintiff in her employment by subjecting her to Performance Improvement Plans and ultimately terminating her employment

70.     As a proximate result of unlawful acts and practices of Defendants alleged above, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings, and other employment benefits.

71.     As a further proximate result of unlawful acts and practices of Defendants as alleged above, Plaintiff has suffered and continues to suffer monetary and compensatory

damages for mental anguish, severe and lasting embarrassment, humiliation, emotional distress, and other incidental and consequential damages and expenses.

### FIFTH CAUSE OF ACTION AGAINST DEFENDANT
### (Denial of Reasonable Accommodation in Violation of the ADA)

72. Plaintiff hereby repeats and realleges each allegation contained in paragraphs numbered "1" through "71" as if set forth fully herein.

73. As a qualified individual with a disability, Plaintiff ably and competently carried out the duties of her position with Defendants with or without a reasonable accommodation.

74. At all times relevant to this action, Plaintiff requested a reasonable accommodation from Defendants, e.g., missing a minimal amount of time from work in order to receive her monthly chemotherapy infusions.

76. Upon information and belief, Plaintiff's reasonable accommodation did not cause an undue hardship upon Defendants.

77. Defendants refused to provide this reasonable accommodation to plaintiff as they repeatedly took adverse employment action against Plaintiff for missing work for the monthly infusions.

78. As a proximate result of Defendants refusal to provide a reasonable accommodation, as alleged above, Plaintiff has suffered and continues to suffer past and future lost earnings, compensatory damages for mental anguish, severe and lasting

embarrassment, humiliation, emotional distress, and other incidental and consequential damages and expenses.

79.     Defendants acted outrageously and intentionally with malice and reckless indifference to Plaintiff's protected civil rights under the ADA and Plaintiff is entitled to an award of punitive damages.

### SIXTH CAUSE OF ACTION AGAINST DEFENDANT
### (Denial of Reasonable Accommodation in Violation of the NYSHRL)

80.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs numbered "1" through "79" as if set forth fully herein.

81.     As a qualified individual with a disability, Plaintiff ably and competently carried out the duties of her position with Defendants with or without a reasonable accommodation.

82.     At all times relevant to this action, Plaintiff requested a reasonable accommodation from Defendants, e.g., missing a minimal amount of time from work in order to receive her monthly chemotherapy infusions.

83.     Upon information and belief, Plaintiff's reasonable accommodation did not cause an undue hardship upon Defendants.

84.     Defendants refused to provide this reasonable accommodation to plaintiff as they repeatedly took adverse employment action against Plaintiff for missing work for the monthly infusions.

85.     As a proximate result of Defendants refusal to provide a reasonable accommodation, as alleged above, Plaintiff has suffered and continues to suffer past and future lost earnings, compensatory damages for mental anguish, severe and lasting embarrassment, humiliation, emotional distress, and other incidental and consequential damages and expenses.

86.     Defendants acted outrageously and intentionally with malice and reckless indifference to Plaintiff's protected civil rights under the ADA and Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment containing the following relief:

a.  An order enjoining Defendants from engaging in the conduct alleged herein;

b.  An order declaring Defendants has willfully violated the ADA and NYSHRL pursuant to their conduct alleged herein;

c.  An award of lost wages and compensatory damages, including an award of back pay and front pay, in an amount to be determined at trial;

d.  An award of damages to compensate Plaintiff for emotional distress and mental anguish suffered as a result of Defendants' unlawful conduct;

e.  An award of punitive damages in an amount to be determined by the jury at trial;

f.  An award of the costs of reasonable attorneys' fees;

g.  An award of the costs of this action; and

    h.    Any such other and further relief as this Court deems just and equitable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated: August 13, 2013
       Syracuse, New York               LEVINE & BLIT, PLLC

/s/_____

Lewis G. Spicer, Esq.
Bar # 517858
*Attorneys for Plaintiff*
499 South Warren Street, Suite 500B
Syracuse, NY 13202
Tel. (315) 460.6472